## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**ROBERT LINWOOD PRINCE,**

Petitioner,

v.

**CIVIL ACTION NO. 2:17cv233**

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections,**

Respondent.

### <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Petitioner Robert Linwood Prince's ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent Harold W. Clarke's ("the Respondent") Motion to Dismiss, ECF No. 9. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 9, be **GRANTED,** and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In the Circuit Court for Prince George's County, Virginia ("the Trial Court"), following a bench trial, Petitioner was convicted of three counts of distribution of a controlled substance.  At all times leading up to trial, at trial, at sentencing, and on direct appeal, Petitioner was represented by Amanda Nicole Mann, Esquire ("Trial Counsel").  ECF No. 1 at 13.  On or about May 5, 2014, Petitioner was sentenced to sixty years of imprisonment with fifty-one years suspended.  ECF No. 1 at 1; ECF No. 11, attach. 2.  The factual findings of the Court of Appeals of Virginia provides the following summary of the evidence presented at trial:

> Sergeant Noel Watson, of the Prince George County Police Department, testified that on November 26, November 27, and December 3 of 2012, he arranged with a confidential informant to engage in a series of controlled drug transactions from appellant. On November 26, 2012, the confidential informant called appellant on the phone and arranged to buy eighty dollars' worth of cocaine. The two agreed to meet near the Farmer's Foods in Crossings Shopping Center. Because the confidential informant was wired with a microphone, Sergeant Watson was able to hear appellant's voice on the phone. When the Commonwealth played the audio recording of the phone call and asked Sergeant Watson if it was "the defendant's voice on the audio," Sergeant Watson replied, "Sounds like it, yes." Later, the trial court asked Sergeant Watson if the voice he heard on the phone recordings matched the voice he heard during the transactions. In response, Sergeant Watson replied, "Sounds like it to me, Your Honor. Yes."

> Before going to Farmer's Foods, Sergeant Watson searched the confidential informant for drugs, contraband, and money, and did not uncover anything that the confidential informant was not supposed to have.[1] Appellant, who was a passenger in a vehicle, was already at the Farmer's Foods store when Sergeant Watson and the confidential informant arrived on November 26, 2012. Sergeant Watson, who was "approximately seventy yards" from the vehicle, testified that he saw the confidential informant walk up to the vehicle and that the confidential informant got into the vehicle. According to Sergeant Watson, nobody came into contact with the confidential informant between the time Sergeant Watson searched her and the time she went into the vehicle. The confidential informant was in the vehicle for "[a] couple of minutes," and did not encounter anybody on her way back from the vehicle to Sergeant Watson. Sergeant Watson testified that "except for when she sat down in the vehicle, I didn't lose sight of her." During

the transaction inside the vehicle, which Sergeant Watson could hear via the confidential informant's audio wire, the driver of the vehicle left the vehicle and went inside of a nearby business.[2]  When the confidential informant returned to Sergeant Watson, Sergeant Watson searched her again and recovered drugs. Sergeant Watson then submitted them to the lab for analysis. The drugs and the certificate of analysis indicating that the drugs were cocaine were admitted into evidence over appellant's objection on chain of custody grounds.

> [1] On cross-examination, Sergeant Watson testified that a search would take "anywhere from forty seconds to a minute." Sergeant Watson did not search the inside of the confidential informant's underwear or inside of her socks or shoes.

> [2] Sergeant Watson observed only two people – appellant and the driver – in the vehicle. He acknowledged, "If there was somebody in the backseat lying down, I wouldn't have been able to tell."

The next day, on November 27, 2012, the same confidential informant once again arranged via phone to buy eighty dollars' worth of cocaine from appellant. The confidential informant dialed the same phone number as she had the day before. Sergeant Watson testified that the voice on the phone on November 27, 2012 was the same as the voice that was on the phone on the previous day. Appellant and the confidential informant agreed to meet near the Beauty World at the Crossings Shopping Center. Just like he did on the previous day, Sergeant Watson searched the confidential informant for drugs, contraband, and money prior to the controlled drug transaction. The search did not yield anything. This second controlled drug transaction also took place in a vehicle, and lasted "only a few minutes at the most." During this transaction, appellant was in the vehicle with an unknown male. Sergeant Watson was about sixty yards from the vehicle and could not see the facial features of the individuals in the vehicle. Sergeant Watson searched the confidential informant after the completion of the transaction and found drugs on her person. After the transaction, the confidential informant did not have the eighty dollars in police department money on her person. The confidential informant gave the drugs to Sergeant Watson, who then packaged them and took them to the lab for analysis. The certificate of analysis, which was admitted into evidence, indicated that the drugs were cocaine. Appellant did not raise any specific objections to the admission of this second certificate of analysis or the corresponding drugs. [Footnote omitted.] Sergeant Watson testified that he never lost sight of the confidential informant before she returned to him.

Finally, on December 3, 2012, the same confidential informant arranged via telephone to buy forty dollars' worth of cocaine from appellant. The phone number that the confidential informant dialed was the same as the number she dialed on the previous two occasions. When the Commonwealth played the recording of that phone call at trial, Sergeant Watson confirmed that the voice on the other end was the same as the voice from the previous two phone calls. Prior to the third transaction, when the confidential informant and appellant were arranging to meet, the two agreed to meet "where they usually meet." The transaction again occurred at the Crossings Shopping Center. Just as he did for the other two transactions, Sergeant Watson searched the confidential informant for money, contraband, and drugs prior to and after the controlled drug transaction. The search prior to the transaction did not yield anything. This third transaction was video recorded, and Sergeant Watson twice was able to see appellant's face through the video. According to Sergeant Watson, appellant was ten feet from Sergeant Watson's vehicle when Sergeant Watson saw him leaving the scene. It appears from the record that the third transaction was also conducted in a vehicle. According to Sergeant Watson, on this third occasion, when the vehicle arrived, there were two people in the vehicle, including appellant. The confidential informant did not interact with anybody on her way to the vehicle and returned to Sergeant Watson after the transaction was complete. After the transaction, the confidential informant no longer had forty dollars' worth of police department funds on her person, but did have drugs – this time packaged in a cigarette box – on her person. The confidential informant turned the drugs over to Sergeant Watson, who then packaged them and submitted them to the lab for analysis. The drugs and the associated certificate of analysis, which indicated that the confidential had received cocaine, were admitted into evidence at trial. Appellant did not make any objection.

After Sergeant Watson testified as to the three controlled drug transactions, the Commonwealth asked that appellant read the following words: "Now is the time for all good men to come to the aid of their country." Appellant read those words aloud three times at the direction of the Commonwealth. When the Commonwealth asked Sergeant Watson if the voice of appellant was the voice he heard on any of the three phone calls, Sergeant Watson replied, "Sometimes it sounded like it. A couple of the words sounded like his voice." Sergeant Watson added that he had heard appellant speaking with his attorney the day of the trial, and that appellant's voice, when speaking aloud with his attorney, matched the voice Sergeant Watson heard on the phone each time. The trial court found that appellant disguised his voice while reading aloud in court, and stated, "He is clearly disguising his voice. I can't ignore that fact."

4

> Sergeant Watson testified that the license plate number on the vehicle involved in all three of the transactions was the same license plate number each time. According to Sergeant Watson, that vehicle is not registered to appellant, but is registered to an individual with the same last name as appellant. Sergeant Watson conceded that he did not know how, or if, that other person was related to or connected to appellant.

ECF No. 11 at 3-6 (quoting ECF No. 11, attach. 1 at 2-5).

The Trial Court, sitting without a jury, found Petitioner guilty of three counts of distribution of cocaine (subsequent offense), in violation of Virginia Code § 18.2-248.[1]  ECF No. 11 at 1. See also January 30,2 014 Trial Transcript at 82:18-22 ("The Court is convinced to a moral certainty beyond a reasonable doubt that the defendant was either the perpetrator or the principal in the second degree, present aiding and abetting in each one of those three drug transactions . . . . And I would say that the evidence that's been introduced, without objection, shows that the defendant had previously been convicted of a similar offense in the Circuit Court of the City of Petersburg."). On or about May 5, 2014, Petitioner was sentenced to a total of sixty years of incarceration with fifty-one years suspended. ECF No. 1 at 1.

Petitioner appealed his convictions to the Court of Appeals of Virginia on the following grounds: (1) that the Trial Court abused its discretion by "admitting evidence with a defective chain of custody," and (2) the evidence was insufficient to support his convictions. See ECF No. 11, attach. 1. By Order dated December 12, 2014, the Virginia Court of Appeals denied Petitioner's appeal. ECF No. 1, attach. 1. Specifically, the Virginia Court of Appeals found that "[t]he trial court did not abuse its discretion when it admitted into evidence the drugs and the three certificates of analysis" and that "a rational factfinder could find the evidence was

---

[1] Va. Code Ann. § 18.2-248A ("[I]t shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance.").

sufficient beyond a reasonable doubt to convict [Petitioner] of all three charged offenses." ECF No. 11, attach. 1 at 5, 8. Petitioner appealed the Court of Appeals' denial of his appeal to the Supreme Court of Virginia, which refused his petition for appeal on September 17, 2015. ECF No. 11 at 1.

On April 21, 2016, Petitioner filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. *See* ECF No. 1, attach. 2 at 1. Therein, Petitioner raised the following claims:

I.   The Trial Court abused its discretion in admitting evidence when the chain of custody was defective

The evidence was insufficient to support [Petitioner's] convictions because the chain of custody was defective.

The evidence was insufficient to support [Petitioner's] three separate cocaine distribution convictions because Sergeant Noel Watson was unable to see the facial features of the occupants in the car involved with the drug transactions.

[Petitioner] was denied a fair trial because the Commonwealth "failed to provide disclosure or exculpatory evidence" by declining to subpoena the confidential informant to testify at [Petitioner's] trial or otherwise disclose the informant's identity.

II.  Trial Counsel was ineffective for failing to request an "informant instruction."

ECF No. 11 at 2. *See also* ECF No. 11, attach. 2. On November 3, 2016, the Supreme Court of Virginia denied and dismissed Petitioner's state habeas petition. With respect to the four separate sub-claims asserted under Claim I, the Supreme Court of Virginia found that all such claims were barred "because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, ware not cognizable in a petition for a writ of habeas corpus." ECF No. 11, attach. 2 at 2 (quoting *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108 (1975)). Regarding Claim II, the Supreme Court of Virginia held that because

6

Petitioner "failed to proffer the proposed instruction or describe how it would have affected the outcome of his trial," this claim satisfied neither *Strickland* prong. ECF No. 11, attach. 2 at 2.

Petitioner filed the instant *pro se* § 2254 Petition for federal habeas relief, ECF No. 1, on May 1, 2017. Therein, Petitioner raised the following four grounds for habeas relief:

1. The evidence was insufficient to support Petitioner's convictions because the chain of custody of the seized cocaine was defective.

2. Trial Counsel was ineffective for failing to request an informant instruction.

3. The Trial Court abused its discretion by admitting the seized cocaine into evidence because the chain of custody was defective.

4. Petitioner's rights were violated by "the Commonwealth and the Trial Court" when "they" failed "to procure the attendance of the police's confidential informant.

ECF No. 1 at 5-11. *See also* ECF No. 11 at 3.

On October 30, 2017, Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and a *Roseboro* Notice. ECF Nos. 9-12. Petitioner filed a Response in Opposition on December 5, 2017. ECF No. 13. Therefore, the instant Petition and Motion to Dismiss are ripe for recommended disposition.

## II. DISCUSSION

A. Exhaustion

Before addressing the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted the claims asserted in the Petition. Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give

"state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). Here, Petitioner raised Claims 1-3, and a portion of Claim 4 either on direct appeal or in his state habeas petition before the Supreme Court of Virginia, which Respondent concedes. *See* ECF No. 11 at 7, ¶ 9 ("[Petitioner's] current claims were presented to the Supreme Court of Virginia either on direct appeal or by way of a state habeas petition. The claims in the current habeas petition are exhausted for purposes of federal habeas corpus review.").[2]

B. Procedural Default

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). As the Fourth Circuit has explained, the procedural default doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas

---

[2] Respondent appears to make the argument that Claim 4 is effectively exhausted because it was procedurally defaulted, which the undersigned discusses in greater detail, *infra*. *See* ECF No. 11 at 8 ("Claims identical to [Petitioner's] present claims I and III were dismissed on the merits in [Petitioner's] direct appeal. They therefore are not procedurally barred from federal habeas review. [Petitioner's] present claim IV never was presented on direct appeal, was barred from state habeas review, and is procedurally barred from federal habeas review.").

petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). *See also Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) ("A federal claim is deemed procedurally defaulted where 'a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule.' . . . A federal court cannot review a procedurally defaulted claim unless the prisoner can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice.") (quoting *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998); citing *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)) (internal citations omitted). As the Supreme Court recently observed, "[t]he procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

Additionally, a petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). When considering a petition for federal habeas corpus, § 2254(d) mandates that a state court's finding of procedural default be presumed correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (explaining that "an adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly

9

followed' by the time as of which it is to be applied") (citing *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

Absent a showing of cause for the default and prejudice or a fundamental miscarriage of justice (such as actual innocence), this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (explaining that "a petitioner may nonetheless overcome procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). The Fourth Circuit has held that "[t]o establish cause, a petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). *See also Davila v. Davis*, 137 S. Ct. 2058, 2065, 198 L. Ed. 2d 603 (2017) ("A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). "This requires a demonstration that 'the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999)). "Importantly, a court need not consider the issue of prejudice in the absence of cause." *Booker v. Clarke*, No. 1:15CV781 (JCC/JFA), 2016 WL 4718951, at *5 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996)).

Here, as Respondent concedes, Claims 1 and 3 are exhausted because they were presented to and denied by the Supreme Court of Virginia on direct review, and therefore are not procedurally barred from federal habeas review. ECF No. 11 at 8. Claim 2 was considered and rejected by the Supreme Court of Virginia on the merits, and therefore is exhausted and not procedurally barred from federal habeas review. ECF No. 11, attach. 2 at 2.

When a version of Claim 4 was presented to the Supreme Court of Virginia in Petitioner's state habeas action, it was articulated as Petitioner "contend[ing] he was denied a fair trial because the prosecutor failed to disclose the identity of a confidential informant or to subpoena the informant to testify at trial." ECF No. 11, attach. 2 at 2. In comparison, Claim 4, as it is stated in the Petition appears to assign error to both the prosecutor *and* the Trial Court for their alleged "failure in their duty to show a good faith effort to procure the attendance [of the confidential informant]." ECF No. 1 at 10.

Thus, the undersigned **FINDS** that Petitioner failed to formally exhaust his state remedies as to the portion of Claim 4 that alleges Trial Court error for failure to procure the presence and testimony of the confidential informant, and the time for doing so has expired. *See* Va. Code. Ann. § 8.01-654(A)(2).[3] *But see Masika v. Chesapeake Circuit Court*, No. 3:16CV1006, 2018 WL 1079575, at *4 & n.5 (E.D. Va. Feb. 27, 2018) ("Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is 'technically met.'") (quoting *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996))). Therefore, in this procedural

---

[3] Virginia Code § 8.01-654(B)(2) is the state's successive petition statute and provides, in pertinent part that
> Such petition shall contain all allegations the facts of which are known to petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition. No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the lime of filing any previous petition.

*Id.*

posture, this portion of Claim 4 is simultaneously exhausted and procedurally defaulted. As explained further herein, such a conclusion renders this Court unable to engage in federal habeas review regarding the merits of that portion of Claim 4. The undersigned's recommended disposition of Claim 4 will address the implications of this procedural defaulted portion of Claim 4 in a subsequent section. *See* Part II.D(4), *infra*.

C. Standards of Review

1. *28 U.S.C. § 2254(d)*

Habeas relief is warranted only if Petitioner can demonstrate that the adjudication of each of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, federal habeas relief is precluded, so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA[4], § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.") (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified *res judicata* rule" under § 2244)). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121 (2011).

---

[4] Antiterrorism and Effective Death Penalty Act of 1996

In *Williams v. Taylor*, the Supreme Court explained that the "exceptions" encapsulated by § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S. 362, 404-05 (2000). A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. This Court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). *See also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In making this determination under Section 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court."). Thus, it is this Court's obligation to focus "on the state court decision that previously addressed the claims

13

rather than the petitioner's freestanding claims themselves."[5]  *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997).  *See also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (explaining that the Court independently reviews whether that decision satisfies either standard). Additionally, in undertaking such review, this Court is mindful that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

### 2. *Ineffective Assistance of Counsel*

Because there is no allegation that the state courts decided Petitioner's state habeas "differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law" and "[t]he applicable federal law consists of the rules for determining when a criminal defendant has received inadequate representation as defined in *Strickland*," *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011); 28 U.S.C. § 2254(d)(1)).  *See also Strickland v. Washington*, 446 U.S. 668 (1984).  Generally, to have been entitled to habeas relief in State court for ineffective assistance of counsel claims under the Sixth Amendment, Petitioner had to show both that his defense counsel provided

---

[5] Pursuant to § 2254(d), the federal court must look to the state court decision that was "adjudicated on the merits in State court proceedings . . . resulting in a decision." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). In this case, the qualifying state court decision on the merits (as to sufficiency of the evidence and Trial Court error is the Court of Appeals of Virginia's December 12, 2014 decision denying Petitioner's direct appeal, *see* ECF No. 11, attach. 1, while the qualifying state court decision on the merits as to the failure to identify the confidential informant and the failure to request an informant jury instruction is the Supreme Court of Virginia's November 3, 2016 decision on Petitioner's state habeas petition, *see* ECF No. 11, attach. 2. *See also* ECF No. 11 at 11 n.1 ("Because the decision by the Court of Appeals of Virginia was the last reasoned decision that rejected [Petitioner's] assertions of trial error, [Respondent] refers to that decision, rather than to the refusal order of the Supreme Court of Virginia. The federal court looks to the last reasoned state court decision.") (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Brumfield v. Cain*, 135 S. Ct. 2269, 2276 (2015)).

deficient assistance, and that he was prejudiced as a result of counsel's deficiency. *Strickland v. Washington*, 446 U.S. 668, 700 (1984) (conceptualizing the inquiry as two required prongs: a deficiency prong and a prejudice prong). First, to establish deficient performance, Petitioner was required to show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 446 U.S. at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Petitioner was also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that a petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding").

The United States Supreme Court summarized the high bar faced by petitioners in a federal habeas proceeding where a petitioner's Sixth Amendment ineffective assistance of counsel claims were previously rejected by the state court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122–23 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))) (internal citations omitted). *See also Knowles*, 556 U.S. at 123 ("Under the doubly deferential judicial review that

15

applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard . . . Mirzayance's

ineffective-assistance claim fails.") (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per*

*curiam*)).  To be sure, and particularly apropos to Petitioner's claim, the "[f]ailure to raise a

meritless argument can *never* amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp.

3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va.

1996)) (emphasis added).

    With these principles in mind, the undersigned now turns to the merits of the Petition.

D.  Facts and Findings of Law

    *1. Claim 1*

    In Claim 1, Petitioner alleges that the evidence was insufficient to support his convictions

because the chain of custody for the seized cocaine was defective.  ECF No. 1 at 5 ("Evidence

was insufficient to support my conviction for distribution of cocaine . . . because the

Commonwealth failed to prove beyond a reasonable doubt that the drugs Langhorne turned over

to Agent Barrett had been obtain [sic] from me.  The evidence linking me to the drugs was

purely circumstantial and speculative, suspicion or even probability of guilt is not sufficient to

uphold a conviction . . . proof of a mere opportunity to commit an offense provides only

suspicion and suspicion is not enough to sustain a conviction.") (internal citations omitted).  On

direct appeal, the Court of Appeals of Virginia rejected this argument, finding that

> The trial court did not abuse its discretion when it admitted into evidence
> the drugs and the three certificates of analysis.  Appellant argues that because
> Sergeant Watson did not directly witness any of the three hand-to-hand
> transactions, and because Sergeant Watson might have failed to discover
> contraband on the confidential informant prior to each transaction, as he did not
> search her undergarments or socks, the Commonwealth has failed to establish a
> chain of custody for the cocaine and associated certificates of analysis.  As for the
> first transaction, appellant contends only that there is a break in the chain of
> custody prior to Sergeant Watson's receipt of the drugs from the confidential

16

informant.  At trial, defense counsel stated, "My objection would be towards the beginning of the chain, not from him to the lab."  Appellant did not object to the other two certificates of analysis or the related drugs on chain of custody grounds.

Regarding the first transaction, the trial court did not abuse its discretion in determining that the Commonwealth had proven the chain of custody.  Prior to that transaction, Sergeant Watson searched the confidential informant.  Sergeant Watson observed the confidential informant walk to the vehicle and back from the vehicle.  Nobody came in contact with the confidential informant on either her walk to the vehicle or her walk back from the vehicle.  The confidential informant was in the vehicle and out of Sergeant Watson's sight for only "[a] couple of minutes."  Upon her return from the vehicle, the confidential informant handed the drugs to Sergeant Watson, who then packaged and submitted the drugs to the lab for analysis.  Thus, the Commonwealth showed with "reasonable certainty" that the cocaine that the confidential informant received from appellant was the same cocaine that was analyzed in the lab. [footnote omitted]

To the extent appellant argues that the chain of custody was not established in the second two controlled drugs transactions, Rule 5A:18 bars this Court's consideration of that argument.  This Court will not consider a claim of trial court error as a ground for reversal "where no timely objection was made, except to attain the ends of justice."  *Marshall v. Commonwealth*, 26 Va. App. 627,636,496 S.E.2d 120, 125 (1998) (citing Rule 5A:18).  "To be timely, an objection must be made when the occasion arises - at the time the evidence is offered or the statement made."  *Marlowe v. Commonwealth*, 2 Va. App. 619,621,347 S.E.2d 167, 168 (1986).  Because the objection was not timely, Rule 5A:18 bars our consideration of this assignment of error on appeal.

> Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. *See, e.g., Redman v. Commonwealth*, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)).  We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

*Edwards v. Commonwealth*, 41 Va. App. 752, 761, 589 S.B.2d 444, 448 (2003) (*en banc*).

17

ECF No. 11, attach. 1 at 5-7.

It is well-established that "[t]he standard of review for an insufficient evidence claim is deferential to the finder of facts; it is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.'" *Rodgers v. Angelone*, 113 F. Supp. 2d 922, 934 (E.D. Va. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979); *McMillan v. Pennsylvania*, 477 U.S. 79 (1986); *Inge v. Procunier*, 758 F.2d 1010 (4th Cir. 1985) *cert. denied*, 474 U.S. 833 (1985); *Goldsmith v. Witkowski*, 981 F.2d 697, 701 (4th Cir. 1992), *cert. denied*, 509 U.S. 913 (1993)) (italics in original).

To the extent that Petitioner complains of Trial Court error in admitting the cocaine evidence as to all three transactions (and of insufficiency of evidence to support a conviction) because of the "circumstantial" nature of the evidence adduced at trial, such an argument is inapposite to well-established case law, and therefore, meritless. The Supreme Court of Virginia has stated, in no uncertain terms, that "in drug cases no less than any other, it 'is axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial evidence.'" *Haskins v. Commonwealth*, 44 Va. App. 1, 6, 602 S.E.2d 402, 404 (2004) (quoting *Etherton v. Doe*, 268 Va. 209, 212-13, 597 S.E.2d 87, 89 (2004)). This is because when the Commonwealth proceeds by way of circumstantial evidence, the prosecution's burden remains "beyond a reasonable doubt." *Haskins v. Commonwealth*, 44 Va. App. 1, 8–9, 602 S.E.2d 402, 405 (2004) ("'The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'") (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 258, 584 S.E.2d 444, 447-48 (2003) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513, 578 S.E.2d 781, 785

(2003))). This burden satisfies the constitutional standard required to comport with due process. *See Victor v. Nebraska*, 511 U.S. 1, 5 (1994) ("The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather 'taken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury.'") (internal citations omitted and alterations in original).[6]

Here, the Trial Court found, notwithstanding Sergeant Watson's inability to see Petitioner's face during the first two drug deals, that the totality of the direct and circumstantial evidence was sufficient to prove Petitioner's guilt beyond a reasonable doubt as to each of Petitioner's three convictions, and that no break in the chain of custody occurred. *See* ECF No. 11, attach. 2 at 7-8 ("The evidence in this case is sufficient to support all three of [Petitioner's] convictions for possession of cocaine with intent to distribute.  The three transactions all occurred in the same vehicle that was registered to a person with [Petitioner's] last name.  The confidential informant dialed the same phone number to initiate each of the three transactions. The voice that answered each of the confidential informant's phone calls was the same each of the three times.  Sergeant Watson identified this voice as [Petitioner's].  The record indicates a finding by the trial court that [Petitioner] disguised his voice when he was asked to read aloud in court.  Regarding the third transaction, [Petitioner] and the confidential informant agreed by phone just to meet at their 'usual spot.'  Even though the confidential informant did not provide

---

[6] Acknowledging that Petitioner was convicted following a bench trial, the undersigned cites to this case solely for its explanation of the reasonable doubt standard, rather than for any proclamation regarding the requirements of a "beyond a reasonable doubt" jury instruction.

[Petitioner] with a specific meeting location, [Petitioner] met the confidential informant at the Crossings Shopping Center - just as he had for the previous two transactions. Accordingly, a rational factfinder could find the evidence was sufficient beyond a reasonable doubt to convict [Petitioner] of all three charged offenses.").

Under the legal standard discussed, *supra*, the Court of Appeals' rejection of this Claim on direct appeal was neither unreasonable, nor contrary to federal law. Accordingly, the undersigned **RECOMMENDS** that Claim 1 be **DISMISSED**.

*2. Claim 2*

In Claim 2, Petitioner contends that Trial Counsel was ineffective for failing to request an "informant instruction" pursuant to *United States v. Luck*, 611 F.3d 183 (4th Cir. 2010).[7] ECF No. 1 at 7 ("An informant instruction is necessary because a general witness credibility instruction is necessary [sic] because a general witness credibility instruction is not sufficiently cautionary for informants because special concern [sic] about the incentive that they may have to fabricate information for their own benefit."). In order for Petitioner to be granted habeas relief on this Claim, he must demonstrate that Trial Counsel provided ineffective assistance of counsel which fell below the permissible minimum level of effectiveness by failing to request an "informant" jury instruction, and that the failure to make such request prejudiced Petitioner, such that the outcome likely would have been different. Consideration of this Claim necessitates rejection of the same under both *Strickland* prongs.

---

[7] In *Luck*, the Fourth Circuit held that a petitioner established both *Strickland* prongs where counsel failed to request an informant testimony instruction. *See United States v. Luck*, 611 F.3d 183, 190 (4th Cir. 2010) ("Therefore, our precedent counsels that had the informant instruction been given, there is a reasonable probability that the outcome of the proceeding would have been different. The government's case was built entirely on a foundation of paid informant testimony. There was minimal physical evidence. No government agent had ever observed Luck engaged in drug activity. Merely giving general instructions as to witness credibility is not sufficient to give confidence that the outcome was not tainted by prejudice. In this case in particular, there was a significant incentive for the government's two main witnesses to give testimony for their own benefit, both in terms of financial compensation and a reduction in sentence.").

The Supreme Court of Virginia's rejection of this Claim was neither unreasonable nor contrary to current United States Supreme Court precedent. Specifically, the Supreme Court of Virginia found that neither *Strickland* prong was established since "Petitioner concedes the informant did not testify at trial," and "[P]etitioner has not proffered the instruction he contends [Trial Counsel] should have requested or articulated how such an instruction would have been beneficial under the facts of his case." ECF No. 11, attach. 2 at 2 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The undersigned agrees.[8]

The undersigned observes that although the Petition references *United States v. Luck* and *United States v. Williams*, two cases that dealt with instructing a jury on informant testimony, Petitioner does not articulate the specific informant instruction that should have been requested by Trial Counsel, and more importantly, how Trial Counsel's failure to make such a request prejudiced Petitioner. *See* ECF No. 1 at 7. *See also Muhammad v. Warden of Sussex I State Prison*, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007) ("Petitioner does not articulate a factual basis to support this claim and does not identify with specificity any act or omission of counsel which was objectively unreasonable. Furthermore, petitioner does not attempt to demonstrate how these failures were prejudicial.").

> In *United States v. Luck*, the defendant was tried by a jury at which time
>
> the government presented evidence from three main witnesses: the police officer investigating the case and two paid informants. [footnote omitted] Atrina Johnson ("Johnson") and Jesse Thompkins ("Thompkins") were the government's main witnesses. Both were informants paid for providing information to the police. Johnson approached the police on her own initiative to provide information about Luck because she wanted to reduce her exposure for a robbery charge she was facing. Thompkins also came forward without prompting by the police. He

---

[8] While the undersigned will address the reasonableness of the Supreme Court of Virginia's conclusions, it is important to note that, fundamentally, Petitioner's Claim is flawed because the failure to request any *jury* instruction cannot be ineffective assistance of counsel when there is *no jury*.

provided information on Luck to benefit Johnson, who was the mother of his child, and to earn money for himself.

*United States v. Luck*, 611 F.3d 183, 184–85 (4th Cir. 2010). The Fourth Circuit described Luck's case as presenting "the classic case of a professional informant paid for his services, which in turn makes it the obvious case for an informant instruction" in light of the fact that (1) not one but two informants "sought out the police and offered to gather evidence and testify in return for certain benefits: time off of Johnson's robbery sentence and financial compensation;" (2) "there was little corroborating evidence beyond the informants' testimony;" (3) although one of the informants "was equipped with recording equipment for her buys, the quality of the recordings was so poor that they were not even used at trial;" and (4) the testifying detective "somewhat corroborated [the female informant's] testimony by observing that she came back from the buys with cocaine base, but he also admitted that he did not conduct a thorough search before Johnson interacted with Luck." *United States v. Luck*, 611 F.3d 183, 188 (4th Cir. 2010).

In contrast to Petitioner, when raising his ineffective assistance of counsel claims, Luck provided the actual instruction that he claimed his trial counsel should have requested, and should have been given by the trial court, relying on existing Fourth Circuit case law. *See United States v. Luck*, 611 F.3d 183, 186–87 (4th Cir. 2010) ("'The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest or by prejudice against a defendant.'") (quoting *United States v. Brooks*, 928 F.2d 1403, 1409 (4th Cir. 1991) (quoting Devitt & Blackmar, *Jury Practice and Instructions* § 17.02 (3d ed. 1977))). Petitioner has proffered nothing.

22

In *Williams*, the Eleventh Circuit held that "[a] defendant is entitled to a special jury instruction on the credibility of a Government informer if the defendant requests it and the testimony implicating the accused is elicited solely from the informer." *United States v. Williams*, 59 F.3d 1180, 1183 (11th Cir. 1995) (citing *United States v. Garcia*, 528 F.2d 580, 587-88 (5th Cir. 1976), *cert. denied*, 429 U.S. 898 (1976). "The purpose behind such a policy is to ensure that no verdict based solely on the uncorroborated testimony of a witness who may have good reason to lie is too lightly reached." *United States v. Williams*, 59 F.3d 1180, 1183 (11th Cir. 1995).   Although Williams' trial counsel did not ask for a special cautionary instruction regarding the credibility of David Brown, a drug dealer turned informant and the government's star witness, the Fourth Circuit found that "[a] careful review of the record indicates that the jury was sufficiently informed as to how to deal with the credibility of a person in Brown's situation so as to make the failure to give a special instruction not fundamentally unfair to [the defendant]" because "Brown's economic involvement with the success of the Government in this prosecution was spelled out in detail in the facts. There is no doubt whatsoever that the jury was well aware that the testimony of David Brown was to be viewed with caution." *United States v. Williams*, 59 F.3d 1180, 1183-84 (11th Cir. 1995).   Based on these circumstances, the Eleventh Circuit found that the only function of a special jury instruction was satisfied and there was no error for failure to give a separate informant instruction, and certainly not one that specifically referenced Brown. *United States v. Williams*, 59 F.3d 1180, 1184 (11th Cir. 1995).

The procedural history and factual background of Petitioner's case makes both *Luck* and *Williams* factually dissimilar and wholly inapplicable to Petitioner's case. Here, unlike both Luck and Williams, who were tried by a jury, Petitioner was convicted following a bench trial,

after knowingly and voluntarily waiving his right to a trial by jury. *See* January 30, 2014 Trial

Transcript at 7:1-13 ("**Trial Court:** Have you talked with [Trial Counsel] about your right to a

trial by jury? **Petitioner:** Yes. Trial Court: You understand you're entitled to be tried by a jury,

but you can give up that right and be tried by a judge? **Petitioner:** Yes, sir.  **Trial Court:** Are

you asking to be tried by a jury or a judge? **Petitioner:** By a judge.  **Trial Court:** So you're

giving up your right to trial by jury? **Petitioner:** Yes, sir.").  Different presumptions apply when

a criminal defendant waives his right to a trial by jury and the Trial Court serves as the finder of

fact. *See, e.g., United States v. Poole*, 640 F.3d 114, 120 (4th Cir. 2011) (explaining that "when

a district court finds a defendant guilty after a bench trial, appellate courts generally presume that

the conviction rested only on admissible evidence") (citing *United States v. Smith,* 390 F.2d 420,

422 n.2 (4th Cir. 1968) (ordinary presumption in non-jury cases is that trial judge relied only on

the evidence that properly was admitted); *United States v. Cardenas,* 9 F.3d 1139, 1156 (5th Cir.

1993) (judge, sitting as a trier of fact, is presumed to have rested decision only on admissible

evidence and to have disregarded inadmissible evidence)).  To be sure, these contrasting

presumptions have no bearing on the validity of a jury verdict as compared to a nonjury verdict.

*See Blow v. Commonwealth*, 52 Va. App. 533, 538, 665 S.E.2d 254, 256 (2008) ("'[T]he

judgment of the trial court sitting without a jury is entitled to the same weight as a jury

verdict.'") (quoting *Saunders v. Commonwealth,* 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991)

(quoting *Evans v. Commonwealth,* 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975))).  Among

these presumptions is the presupposition that a Trial Court need not expressly instruct himself.

*See, e.g., Commonwealth v. Musick*, 92 Mass. App. Ct. 1112, 94 N.E.3d 439 (2017) ("In this

bench trial, the judge is presumed to have "'correctly instructed himself' on the law of

24

evidence.") (quoting *Commonwealth v. Sepheus*, 468 Mass. 160, 170 (2014) (quoting *Commonwealth v. Ortiz*, 431 Mass. 134, 141 (2000))).

Following its colloquy with Petitioner, the Trial Court proceeded to trial, giving both the Commonwealth's Attorney and Trial Counsel the opportunity to make brief opening statements, to argue their respective positions regarding Trial Counsel's Motion to Strike following the close of the prosecution's evidence, and to respond to the Trial Court's inquiries regarding such Motion, and prior to the Trial Court's announcement of the guilty verdict the Trial Court did not instruct himself. *See* January 30, 2014 Trial Transcript at 8-83.

Additionally, the Trial Court was well aware that the confidential informant would not testify and that Sergeant Watson would be the only witness called. *See* January 30, 2014 Trial Transcript at 9:13-20 ("**Trial Court:** Judge, this is a little different situation. There is no witness that saw [Petitioner] give any drugs to this confidential informant. And without that informant here to testify today, we think you will find there is a defect in the chain of custody. **Trial Court:** All right. Thank you."). Also, unlike in *Luck*, the recordings from each of the three transactions of which Petitioner stood accused were submitted to the Trial Court for consideration. Under these circumstances, it was reasonable for Trial Counsel not to have asked for an informant instruction such as in *Luck* or *Williams* because it simply was not appropriate – there was no jury and no informant testimony. It is axiomatic that the "[f]ailure to raise a meritless argument can never amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996)).

Even assuming *arguendo*, that Trial Counsel's performance fell below the acceptable level of effectiveness by not requesting an informant instruction (which the undersigned has

already deemed unwarranted) Petitioner cannot establish *Strickland*'s prejudice prong, because it is not reasonably likely the outcome would have changed. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) ("In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. . . . This does not require a showing that counsel's actions 'more likely than not altered the outcome' . . . . The likelihood of a different result must be substantial, not just conceivable.") (citing *Wong v. Belmontes,* 558 U.S. 15, 27 (2009) (per curiam); *Strickland,* 466 U.S. at 693, 696-97). Petitioner here has failed to demonstrate how the trial's outcome would have been different had Trial Counsel proffered the informant instruction.  The Trial Court is presumed to have followed the law, *see Flowers v. Commonwealth*, No. 1822-10-2, 2011 WL 4770396, at *3 (Va. Ct. App. Oct. 11, 2011) ("'A trial court is presumed to apply the law correctly.'") (quoting *Breeden v. Commonwealth,* 43 Va. App. 169, 188, 596 S.E.2d 563, 572 (2004) (quoting *Shenk v. Shenk*, 39 Va. App. 161, 169, 571 S.E.2d 896, 900 (2002)))[9], and thus Petitioner could not have been prejudiced under these circumstances.

In sum, the undersigned **FINDS** that Claim 2 lacks merit, and that the Supreme Court of Virginia's rationale for denying this Claim when it was raised in Petitioner's state habeas petition "was not contrary to federal law, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *2 (E.D. Va. Mar. 30, 2010).  Accordingly, the undersigned **RECOMMENDS** that Claim 2 be **DISMISSED**.

---

[9] *See also Hamad v. Hamad*, 61 Va. App. 593, 602, 739 S.E.2d 232, 237 (2013) ("To begin with, we presume trial judges 'know the law and correctly apply it.'") (quoting *White v. White*, 56 Va. App. 214, 217, 692 S.E.2d 289, 290 (2010) (citation omitted))

### 3. Claim 3

In Claim 3 Petitioner contends that the Trial Court abused its discretion in admitting the seized cocaine into evidence because the chain of custody was defective. ECF No. 1 at 8 ("Trial Court overruled the objection of my Trial Counsel's [sic] due to a crucial break in the chain of custody of Commonwealth's Exhibits 1, 3, and 4. The objection was made in compliance with the Va. Supreme Court Rule 5A:18 on the grounds that the introduction of said evidence was contrary to the law of evidence.") (citing January 30, 2014 Trial Transcript at 15:9-11; *id.* at 31:6-14; *id.* at 65:16-19). For essentially the same reasons underlying the undersigned's rejection of Claim 1, the undersigned also **FINDS** that Claim 3 does not warrant the habeas relief sought by Petitioner.

As detailed in the undersigned's consideration of Claim 1, *see* Part II.D(1), *supra*, the Court of Appeals of Virginia provided a detailed explanation in support of their finding that the Trial Court had not abused its discretion by ruling that the chain of custody was unbroken as to all three transactions for which Petitioner was convicted. *See* ECF No. 11, attach. 1 at 1-6. Like Claim 1, the undersigned **FINDS** that the Court of Appeals of Virginia's disposition of Claim 3 on direct appeal was neither unreasonable nor contrary to federal law. Accordingly, the undersigned **RECOMMENDS** that Claim 3 be **DISMISSED**.

### 4. Claim 4

As noted in Part II.B, *supra*, in Claim 4, Petitioner alleges that his rights were violated by both "the Commonwealth and the [Trial] Court" when "they" failed to procure the attendance of the purported police confidential informant at trial. ECF No. 1 at 10 ("They failed in their duty to show a good faith effort to procure the attendance of the purported police (I to testify at trial on January 30, 2014 as to whom the alleged drugs introduced into evidence as Commonwealth's

Exhibit 1, 3, and 4 where in fact procured from November 26, 27 and December 3, 2002 [sic].")
(citation omitted).  To the extent that Claim 4 challenges *the prosecutor's* failure to procure the
confidential informant's presence and testimony at Petitioner's trial, that assignment of error was
considered and rejected by the Supreme Court of Virginia.  Specifically, the Supreme Court of
Virginia found that this portion of Claim 4 was "barred because [this] non-jurisdictional issue[]
could have been raised at trial and on direct appeal and, thus, [is] not cognizable in a petition for
aa writ of habeas corpus."  ECF No. 11, attach. 2 at 2 (citing *Slayton v. Parrigan*, 215 Va. 27,
205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108 (1975)).  *See also Johnson v. Clarke*, No.
1:13CV423 LO/IDD, 2014 WL 3697405, at *5 (E.D. Va. July 23, 2014) ("The Fourth Circuit
has consistently held that 'the procedural default rule set forth in *Slayton* constitutes an adequate
and independent state law ground for decision.'") (quoting *Mu'min v. Pruett*, 125 F.3d 192, 196–
97 (4th Cir. 1997)).  Accordingly, the undersigned **FINDS** that as to this portion of Claim 4, the
Supreme Court of Virginia's rejection of the claim was neither unreasonable to nor contrary to
United States Supreme Court law.

As the undersigned previously determined in Part II.B, *supra*, the remaining portion of
Claim 4 assigns error to *the Trial Court* for failing in its purported duty "to show a good faith
effort to the procure the attendance" of the confidential informant utilized by Sergeant Watson in
conducting the controlled drug purchases with Petitioner.  As Respondent notes, this portion of
Claim 4 was not presented to the Supreme Court of Virginia because it was not raised in
Petitioner's state habeas petition or on direct appeal.  ECF No. 11 at 8.  Therefore, it is
procedurally defaulted.

In the Fourth Circuit, it is well-established that Virginia's bar on successive habeas
petitions (as encapsulated by Va. Code Ann. § 8.01–654(B)(2)) is  an adequate and independent

procedural rule when so applied. *See Clagett v. Angelone*, 209 F.3d 370. 379 (4th Cir. 2000); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006). It is equally well-established that "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *Beard v. Kindler*, 558 U.S. 53, 55 (2009)). Petitioner's failure to raise this portion of Claim 4 in his state habeas petition or on direct appeal significantly constrains the scope of federal habeas review, as it is well settled that where, as here, a state court would find that a claim is procedurally defaulted based on an adequate and independent state-law ground, the claim may not be reviewed on the merits by a federal habeas court, "unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Baker v. Clarke*, 95 F. Supp. 3d 913, 917 (E.D. Va. 2015) (quoting *Harris v. Reed*, 489 U.S. 255, 262 (1989) (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 495 (1986)); *Williams v. French*, 146 F.3d 203, 208–09 (4th Cir. 1998)) (internal citations omitted). Therefore, Petitioner's salvation would lie, if at all, in whether he is "able to overcome [this] procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review." *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)).

As noted in the preceding discussion, this Court may only consider the merits of Petitioner's procedurally defaulted portion of Claim 4 if he can show cause and prejudice for the default, or that a fundamental miscarriage of justice would occur. For example, "[a] petitioner

may avail himself of the 'fundamental miscarriage of justice' exception to the procedural default bar by proffering new, reliable evidence sufficient to support a claim of actual innocence." *Jefferson v. Clarke*, No. 2:16CV572, 2017 WL 3223935, at *9 (E.D. Va. July 5, 2017), *report and recommendation adopted*, No. 2:16CV572, 2017 WL 3222539 (E.D. Va. July 28, 2017), *appeal dismissed*, 707 F. App'x 145 (4th Cir. 2017) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15, 324 (1995); *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) ("[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.")). In response to Respondent's argument that Claim 4 is procedurally defaulted, Petitioner's attempt to demonstrate any of these factors to overcome the procedural default of Claim 4 is insufficient. Although Petitioner states in his Opposition to the Motion to Dismiss that "[t]he Petitioner has maintained his innocence throughout the entire trial and thereafter and state again [sic] he is innocent," this is not enough to overcome the procedural default of this portion of Claim 4. ECF No. 13 at 6.

As noted previously, "habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief." *Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."); *Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003)). "These so-called 'gateway' innocence claims may be based upon evidence of the petitioner's innocence of the crime for which he was convicted." *Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006) (citing *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995)).

However, as the Fourth Circuit has recognized, the Supreme Court has strongly suggested that claims of actual innocence standing alone do not serve as an independent basis for habeas relief. *Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006) ("'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'") (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). *See also Rouse v. Lee*, 339 F.3d 238, 255 (4th Cir. 2003) (noting that "claims of actual innocence are not grounds for habeas relief even in a capital case") (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). Assuming that free-standing actual innocence claims were cognizable on federal habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Buckner v. Polk*, 453 F.3d 195, 199 (4th Cir. 2006) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). Here, Petitioner has not asserted a freestanding claim of actual innocence and in responding to Respondent's Motion to Dismiss offers no specific new evidence of his "actual innocence." Rather, Petitioner avers that

> If the Trial Court would had [sic] allowed [Petitioner] to cross examine the (CI) to ruin his credibility, to cause him/her to perjure themselves, or to see if his/her testimony was relevant or not the outcome of the trial would have been different. But due to the fact that the Commonwealth and the Trial Court concealed the (CI) identity we would never know the truth.

ECF No. 13 at 4.

Accordingly, Petitioner "has failed to meet even the presumptively less stringent standard of proof by which gateway innocence claims are measured," because "[p]etitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence." *Buckner v. Polk*, 453 F.3d 195, 199–

31

200 (4th Cir. 2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Petitioner's bald and conclusory claims about what the Confidential Informant would have testified to do not meet the preponderance of evidence standard required for the undersigned to even consider his claim of actual innocence.   To be sure, "[n]ew evidence that merely undermines the state's theory of the case but does not rebut specific [factfinder] findings of guilt is insufficient to demonstrate actual innocence." *Buckner v. Polk*, 453 F.3d 195, 200 (4th Cir. 2006) (quoting *Herrera v. Collins,* 506 U.S. 390, 418-19 (1993)).

Additionally, the undersigned notes that in Virginia, assertions of actual innocence are governed by Virginia Code §§ 19.2-327.1 through -327.6 and Virginia Code §§ 19.2-327.10 through -327.14, and are outside the scope of habeas corpus review, which concerns only the legality of the petitioner's detention. *See Lovitt v. Warden*, 266 Va. 216, 259, 585 S.E.2d 801, 827 (2003) ("We also observe that an assertion of actual innocence is outside the scope of habeas corpus review, which concerns only the legality of the petitioner's detention.") (citing *Virginia Parole Bd. v. Wilkins*, 255 Va. 419, 420-21, 498 S.E.2d 695, 696 (1998); *McClenny v. Murray*, 246 Va. 132, 134-35, 431 S.E.2d 330, 331 (1993); *Smyth v. Holland*, 199 Va. 92, 96-97 S.E.2d 745, 748 (1957)).

This Court may not review claims which have been procedurally defaulted in state court. *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *1 (E.D. Va. Mar. 30, 2010) (finding a claim was "procedurally defaulted in the Supreme Court of Virginia because [it was] raised and rejected on procedural grounds at trial and on direct appeal. . . . Thus, since Petitioner's claims were procedurally defaulted in state court, they are likewise defaulted for the purposes of federal habeas review") (citing *Henry v. Warden*, 265 Va. 246, 576 S.E.2d 495, 496 (Va. 2003); *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108 (1975); *Coleman v.*

32

*Thompson*, 501 U.S. 722, 748 (1991)) (internal citations omitted). The undersigned **FINDS** that this procedural default is an adequate and independent state law ground for refusing federal habeas corpus relief as to the portion of Claim 4 that asserts Trial Court error for failing to procure the attendance of the confidential informant at Petitioner's bench trial. *See Beaver v. Thompson*, 93 F.3d 1186, 1194 (4th Cir. 1996) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)). The undersigned also **FINDS** that Petitioner has failed to establish cause and prejudice or a fundamental miscarriage of justice to excuse such default. Accordingly, the undersigned **RECOMMENDS** that Claim 4 be **DISMISSED**.

### III.   RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss, ECF No. 9, be **GRANTED**, and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

### IV.   REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.   Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.   A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the

33

above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to *pro se* Petitioner and to counsel for Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 12, 2018